# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:11-CV-195-GCM-DCK

| | |
|---|---|
| WILLETTE THOMAS HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 13) and Defendant's "Motion For Summary Judgment" (Document No. 19). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Willette Thomas Henderson ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On March 19, 2007, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*, alleging an inability to work due to a disabling condition beginning February 2, 2006. (Transcript of the Record of Proceedings ("Tr.") 12). The Commissioner of Social Security (the

"Commissioner" or "Defendant") denied Plaintiff's application initially on September 12, 2007, and again after reconsideration on March 7, 2008. (Tr. 12). Plaintiff filed a timely written request for a hearing on March 19, 2008. (Tr. 12).

On May 7, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge H. Allen Wagner ("ALJ"). (Tr. 12, 25-64). On November 16, 2009, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 9-11). Plaintiff filed a request for review of the ALJ's decision on December 8, 2009, which was denied by the Appeals Council on February 22, 2011. (Tr. 1-4). The November 16, 2009 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. Id.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on April 19, 2011. (Document No. 1). Plaintiff's "Motion For Summary Judgment" (Document No. 13) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 14), were filed September 29, 2011; and Defendant's "Motion For Summary Judgment" (Document No. 19) and "Memorandum In Support Of The Commissioner's Decision" (Document No. 20), were filed January 10, 2012. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between February 2, 2006, and the date of

his decision.[1] (Tr. 12). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from February 2, 2006, through the date of his decision, November 16, 2009. (Tr. 19).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 18-19).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since February 2, 2006, her alleged disability onset date. (Tr. 14). At the second step, the ALJ found that Plaintiff's narcolepsy and diabetes mellitus were severe impairments. (Tr. 14).[2] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 15).

Next, the ALJ assessed Plaintiff's RFC and found that she could:

> lift/carry 20 pounds occasionally and 10 pounds frequently; that she should not be exposed to dangerous working conditions such as driving or being around hazardous machinery or heights; that she stand 6 out of 8 hours and sit for the remaining 2 hours. However, she needs the ability to change position throughout the day (a sit/stand option). She also needs the ability to rest and/or sleep at lunchtime for 30 to 45 minutes either by lying down, if possible, or sitting with her head down on a table.

(Tr. 15). In making his finding, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. Id. The ALJ further opined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her testimony regarding her symptoms' intensity, persistence and limiting effects were not credible to the extent they were inconsistent with the above residual functional capacity assessment. (Tr. 16).

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a presser and fast food cashier. (Tr. 17-18). At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 18). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations claimant could perform included representative occupations such as housekeeping, nursery worker, and animal caretaker. (Tr. 18). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between February 2, 2006, and the date of his decision, November 16, 2009. (Tr. 19).

Plaintiff on appeal to this Court makes the following assignments of error: (1) inadequate weight given to opinions of treating physicians; (2) improper RFC finding and hypothetical to VE; and (3) improper assessment of Plaintiff's credibility. (Document No. 14). The undersigned will discuss each of these contentions in turn.

**A. Weight Afforded Treating Physicians' Opinions**

In her first assignment of error, Plaintiff argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinions of her treating physicians. (Document No. 14, pp.15-20).

In addressing the weight to be afforded a treating physician's opinion, 20 C.F.R. § 404.1527 provides in pertinent part:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

> inconsistent with the other substantial evidence in your case record, we will give it controlling weight . . . We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. 1527(d)(2) (2011). Social Security Ruling ("SSR") 96-2p, which expands upon 20 C.F.R. §404.1527 and was cited by Plaintiff, provides an ALJ with guidance in making a determination about the weight to be given to a treating physician's opinion. SSR 96-2p provides in pertinent part:

> <u>Controlling weight</u>. This is the term used in 20 CFR 404.1527(d)(2) and 416.927(d)(2) to describe the weight we give to a medical opinion from a treating source that must be adopted. The rule on controlling weight applies when all of the following are present:
>
> 1. The opinion must come from a "treating source," as defined in 20 CFR 404.1502 and 416.902. Although opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to "controlling weight."
>
> 2. The opinion must be a "medical opinion." Under 20 CFR 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. (<u>See</u> SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner.")
>
> 3. The adjudicator **must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques**. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion.
>
> 4. Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, **the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record**.
>
> <u>If any of the above factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight</u>. It is an error to give an opinion controlling weight simply because it is the opinion of a

> treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

SSR 96-2p, "...Giving Controlling Weight to Treating Source Medical Opinion," 1996 WL 374188 at *2 (1996) (emphasis added); see also, Ward v. Chater, 924 F.Supp. 53, 55-56 (W.D.Va. 1996) (recognizing that the standard for the weight afforded to a treating physician's opinion under 20 C.F.R. §404.1527(d) supersedes the previous standard of the "treating physician's rule" that a claimant's treating physician's opinion "may only be disregarded if there is persuasive, contradictory evidence.").

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527. These factors include: (1) length of the treatment relationship and frequency of evaluation; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

Plaintiff repeatedly contends that the ALJ erred here by failing to cite "persuasive contradictory evidence." (Document No. 14, p.17) (treating physician's opinion "may be disregarded only if there is persuasive contradictory evidence." . . . "That is not **persuasive contradictory** evidence." . . . "The ALJ never identifies persuasive contradictory or inconsistent evidence..." . . . "this is not persuasive contradictory evidence." . . . "Again, the ALJ fails to cite to persuasive contradictory or inconsistent evidence..."). As noted above and as Defendant argues,

however, this standard has been superceded by more recent regulations, which have been affirmed by relevant caselaw. (Document No. 20, p.6) (citing Ward v. Chater, 924 F.Supp. at 55-56; Winford v. Chater, 917 F.Supp. 398, 400-401 (E.D.Va. 1996); Shrewsbury v. Chater, 1995 WL 592236 at *9 n.5 (4th Cir. Oct. 6, 1995); Pittman v. Massanari, 3:00-CV-254-CH, 141 F.Supp.2d 601, 608 (W.D.N.C. Apr. 11, 2001). Moreover, this Court pointed out Plaintiff's counsel's apparent misplaced reliance on the "persuasive contradictory evidence" standard in another case just a few weeks before he filed the current summary judgment motion. See Vallejo v. Astrue, 3:10-CV-445-GCM-DCK, 2011 WL 4595259 at *4-5 (W.D.N.C. Aug. 4, 2011) aff'd by 2011 WL 4597348 (W.D.N.C. Sept. 30, 2011).

In this case, Plaintiff argues that the ALJ and the Appeals Council improperly rejected the opinions of treating physicians Hill-Erskine, Stern, and Gleditsch, and of treating therapist Delaney. First, Plaintiff argues that the ALJ mistakenly gave little weight to Dr. Hill-Erskine's opinion. (Document No. 14, p.17). Dr. Hill-Erskine had opined that Plaintiff was incapable of even "low stress jobs" because she was unable to stay awake during the day to maintain employment. (Tr. 17, 324). Plaintiff contends that the ALJ applied the wrong standard in finding the Hill-Erskine opinion "too restrictive and inconsistent with the evidence of record as whole." (Document No. 14, p.17) (citing Tr. 17). However, as noted above, the proper standard requires that the "adjudicator must find that the treating source's medical opinion also must be **'not inconsistent' with the other 'substantial evidence' in the individual's case record**...." SSR 96-2p (emphasis added).

Here, the ALJ opined that the treating source's opinion was **inconsistent with the record as a whole**, and specifically cited to a progress note and her activities of daily living. (Tr. 17) (citing Tr. 178, 333) (emphasis added). The ALJ noted that Plaintiff's narcolepsy had benefitted from

9

medication. (Tr. 17). The undersigned observes that the progress note cited by the ALJ further provides that Plaintiff was benefitting from her medications despite her "spotty compliance." (Tr. 333). Plaintiff was taking her narcolepsy medications approximately three (3) days a week, but encouraged to "take her meds daily for better symptom control." (Tr. 333).

Based on the foregoing, the undersigned is not persuaded that the ALJ applied an incorrect standard of law, or otherwise erred, in affording little weight to Dr. Hill-Erskine's opinion that Plaintiff was incapable of even "low stress" jobs.

Plaintiff also argues that the ALJ's reason for rejecting Dr. Stern's opinion was faulty. (Document No. 14, p.17). The ALJ gave little weight to Dr. Stern's opinion that Plaintiff needs to lie down at unpredictable intervals during a work shift based on the evidence that she had improvement with medication. (Tr. 17). Plaintiff asserts that the ALJ's finding that the evidence of record showed that Plaintiff had improvement with medication was not "persuasive contradictory evidence." (Document No. 14, p.17) (citing Tr. 17).

Although the ALJ gave little weight to some parts of Dr. Stern's opinion, he gave more weight to other parts. (Tr. 17). In fact, as Defendant argues in its motion, Dr. Stern did not opine that Plaintiff was completely incapable of working and the "ALJ's RFC determination is largely consistent with the limitations described by Dr. Stern, incorporating the need to shift positions, the need to avoid hazards, and the need to take a break for 30-45 minutes per day to rest." (Document No. 20, pp.8-9) (quoting Tr. 15); see also, (Tr. 318-320). Defendant argues that the ALJ properly weighed Dr. Stern's opinion based on the record evidence and incorporated limitations ascribed by Dr. Stern that were supported by the evidence. Id. The undersigned agrees.

Plaintiff further argues that the Appeals Council improperly rejected the opinions of Dr. Gleditsch and therapist Christine Delaney. (Document No. 14, pp.19-20); see also, (Tr. 2). The Appeals Council considered Plaintiff's additional reports from Dr. Gleditsch and Ms. Delaney, gave them little weight, and concluded that they did not provide a basis for changing the ALJ's decision. (Tr. 1-2). According to Defendant, the Appeals Council's determination is not directly at issue; "[r]ather, the proper inquiry is whether the ALJ's decision remains supported by substantial evidence after consideration of the evidence submitted to the Appeals Council." (Document No. 20, p.10) (citing Wilkins v. Secretary of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

Defendant argues that Dr. Gleditsch had only seen Plaintiff once or twice, for at most 30 minutes, at the time he rendered his opinion in February 2010. Id. As such, Defendant contends he was not a treating physician within the regulations and his opinion was not entitled to controlling weight. (Document No. 20, pp.10-11) (citing 20.C.F.R. §§ 404.1502, 416.902, and Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983). Defendant further asserts that Ms. Delaney was not an acceptable medical source within the regulations. (Document No. 20, p.11) (citing 20.C.F.R. §§ 404.1513, 416.913, and SSR 06-03p).

Defendant also argues that to the extent Dr. Gleditsch and Ms. Delaney opined that Plaintiff was unable to work, their opinions were not medical opinions, and moreover they were opinions on an administrative issue reserved to the Commissioner. (Document No. 20, p.11) (citing 20.C.F.R. §§ 404.1527(e)(1) and (e)(3), 416.927(e)(1) and (e)(3)). Defendant concludes that the Gleditsch and Delaney opinions were inconsistent with other substantial evidence of record, which supports the ALJ"s decision. (Document No. 20, p.11).

The undersigned has reviewed the additional evidence submitted to the Appeals Council from Dr. Gleditsch and Ms. Delaney and is not persuaded that the Appeals Council erred in finding that "this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2, 416-432). Furthermore, it appears that the ALJ relied upon substantial evidence within the record and found that at least parts of the Hill-Erskine and Stern opinions were inconsistent with substantial evidence in the record; thus, his decision to afford little weight to those opinions was proper under 20 C.F.R. §404.1527. In short, the undersigned does not find that the ALJ committed reversible error in the weight he afforded the opinions of Hill-Erskine and Stern; or that the Appeals Council committed reversible error by rejecting the opinions of Gleditsch and Delaney.

**B. Residual Functional Capacity and Hypothetical Question to VE**

Next, Plaintiff challenges the ALJ's compliance with SSR 83-12 in determining her RFC, and thus further alleges that the hypothetical question to the VE was improper. (Document No. 14, pp.20-22). Specifically, Plaintiff asserts that "the ALJ failed to specify the frequency of the sit/stand option in his hypothetical to the VE. (Document No. 14, p.22). Plaintiff argues that an "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." (Document No. 14, pp.20-21) (quoting SSR96-9p).

In response, Defendant contends that the ALJ properly relied on the VE's testimony regarding this issue. (Document No. 20, p.11). Defendant notes that the ALJ revised his hypothetical to reflect an individual who would need "the ability to change position frequently." (Document No. 20, p.12); see also, (Tr. 61). Defendant further notes that "frequent" is a term of art meaning activity that occurs one-third to two-thirds of the time. Id. (citing SSR 83-10). The

12

VE affirmed that the jobs he identified would accommodate such a limitation. Id.; see also, (Tr. 60-61).

After careful review of the parties' arguments and the transcript of the hearing, the undersigned does not find error in either the ALJ's hypothetical to the VE, or his RFC assessment. As noted above, the ALJ specifically opined that Plaintiff "needs the ability to change position throughout the day (a sit/stand option). She also needs the ability to rest and/or sleep at lunchtime for 30 to 45 minutes either by lying down, if possible, or sitting with her head down on a table." (Tr. 15). At the hearing, both the ALJ and Plaintiff's counsel had ample opportunity to elicit testimony from the VE on this topic, and did so. (Tr. 59-63). It appears to the undersigned that the ALJ thoroughly evaluated Plaintiff's needs to sit, stand and change positions at the hearing, and relied on substantial evidence in making the RFC determination. See (Tr. 59-63).

### C. Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ erred in evaluating her subjective complaint by failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529. (Document No. 14, pp.22-26). More specifically, Plaintiff contends that the ALJ failed to "provide some clearly specified evidence supported reasons for his rejection of Ms. Henderson's testimony." (Document No. 14, p.25). However, Plaintiff acknowledges that the ALJ specified that he did not find Plaintiff's testimony persuasive based on her activities of daily living and work as a caregiver to her sister. (Document No. 14, pp.23-24).

When assessing credibility, factors an ALJ must consider in addition to objective medical evidence include: daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness and side effects of

medication that alleviates symptoms; treatment other than medication; other measures to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR96-7p, 1996 WL 374186 at *3; see also, 20 C.F.R. § 404.1529 (c).

Based on his consideration of the entire case record, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they were inconsistent with his RFC assessment. (Tr. 16). The ALJ further opined that:

> The claimant's testimony as to the intensity and limiting effects of her symptoms is not persuasive in view of her daily activities. She does household chores, grocery shops, watches television, and attends church every Sunday. The claimant testified that she has been disabled since the ninth grade as a result of narcoplepsy. However, she also testified that beginning in 2005 she was a caregiver for her sister until she passed away. It is very difficult to be a caregiver if you suffer from excessive sleepiness. The duties require an alert and active individual.

(Tr. 16). The decision of the ALJ also noted that the evidence of record showed that Plaintiff had "spotty compliance with medications but she still seems to function well." (Tr. 17). The ALJ specifically cited reports that Plaintiff was alert when she took her medication, but that she was only taking her medication approximately three (3) days a week, instead of daily as recommended for better symptom control. (Tr. 17) (citing Tr.333, 345). The ALJ concluded that Plaintiff could perform work within the RFC he outlined, if she "is fully compliant with her medication regimen and diet." (Tr. 17).

Defendant argues that the ALJ exercised proper discretion in weighing Plaintiff's credibility and that his interpretation must be given deference. (Document No. 20, pp.12-13). An ALJ is accorded deference; "[b]ecause he had the opportunity to observe the demeanor and determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id. (quoting Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Defendant further argues that the ALJ's credibility determination was not conclusory because he considered Plaintiff's testimony; her activities of daily living; her treatment, including medications; the efficacy and frequency of her treatment; and the opinion evidence. The undersigned agrees.

Although the ALJ's explanation of his reasoning regarding Plaintiff's credibility might not have been exhaustive, the undersigned is satisfied that it is more than sufficient; and most importantly, the undersigned finds that his decision rests upon specific reasons supported by the record as a whole.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 13) be **DENIED**; Defendant's

"Motion For Summary Judgment" (Document No. 19) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Graham C. Mullen.

**IT IS SO RECOMMENDED**.

Signed: March 22, 2012

David C. Keesler
United States Magistrate Judge